UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-14422-ROSENBERG
MAGISTRATE JUDGE REID

NEAL H. BOCHNER,

    Plaintiff,

v.

MARTIN COUNTY, et al.,

    Defendants.

_____/

# REPORT OF MAGISTRATE JUDGE RE: DEFENDANTS' MOTIONS FOR FINAL SUMMARY JUDGMENT
**[ECF 228]**

## I. Introduction

The incarcerated Plaintiff, **Neal H. Bochner**, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 regarding his medical treatment while housed at Martin County Jail ("MCJ") in 2014 and 2015. The Magistrate Judge issued a report recommending that the deliberate indifference claim proceed against Armor Correctional Health Services, Inc. ("Armor") Nurse Donna Lee and Nurse Karen. [ECF 37]. The district court adopted the report's recommendations. [ECF 40].

Nurses Donna Lee and Karen have filed a motion for summary judgment arguing that the record evidence reveals no genuine issue of material fact and the

defendants are entitled to summary judgment on the deliberate indifference claim. [ECF 228, pp. 1-2]. In support of the motion, Defendants filed the following exhibits: Affidavit of Donna Lee [ECF 228-1]; Affidavit of Karen Harris [ECF 228-2], Affidavit of Nursing Expert Bridgette Jones [ECF 228-3], and Affidavit of Nurse Lowenberg [ECF 228-4].

Plaintiff filed a response in opposition [ECF 244] and attached the following documents: Donna Lee's answers to Plaintiff's interrogatories [ECF 244, pp. 6-10]; Sick call requests [ECF 244 pp. 11-17; 244-2, pp. 22-35]; Nurse Karen's answers to Plaintiff's interrogatories [*Id.* pp. 18-21]; Photographs of Plaintiff's injuries taken in March of 2014 [ECF 244-1]; Plaintiff's medical records [ECF 244-2, pp. 1-82]; and Newspaper articles about various Armor patients [ECF 244-2, p. 82]. Defendants filed a reply to Plaintiff's response. [ECF 246].

For the reasons set forth in this Report, the Undersigned recommends that the Defendants' motion for summary judgment [ECF 228] be **granted**.

## II. Standard of Review

### A. Law Pertaining to §1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) defendant(s) deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275,

1288 (11th Cir. 2001). In addition, Plaintiff must further allege and establish an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1039 (11th Cir. 2001).

### B. Law Pertaining to Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).

Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party

contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Id.* (relying upon *Anderson*, 477 U.S. at 248). In sum, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary

4

judgment if the facts in the record—including those considered undisputed—illustrate that the movant is entitled to judgment in its favor. Fed. R. Civ. P. 56(e)(2).

### III. Facts

### 1. Defendants' Version of Events

Nurses Donna Lee and Karen were employed by Armor and working at MCJ at all times relevant to the Plaintiff's allegations. [ECF 228-1, ¶ 2; 228-2, ¶ 2].

Both Donna Lee and Karen are Licensed Practical Nurses ("LPN"). [ECF 228-1, ¶ 3; 228-2, ¶ 3]. Neither are permitted by law to prescribe medication. [ECF 228-1, ¶ 4; 228-2, ¶ 4]. In order to provide prescription medication to a patient, Nurse Donna Lee and Nurse Karen must have a proper and authorized prescription for that patient. [ECF 228-1, ¶ 5; 228-2, ¶ 5]. Both nurses are only permitted to provide prescription medication without a prescription if there is a clear medical emergency. [ECF 228-1, ¶ 6; 228-2, ¶ 6].

Nurse Donna Lee and Nurse Karen encountered Plaintiff at MCJ when doing medicine rounds or assisting another medical provider. [ECF 228-1, ¶¶ 7, 8; 228-2, ¶¶ 7, 8].

The Defendants were not involved in writing or fulfilling requests for patients to see outside medical providers or to be transported for MRIs or X-rays. [ECF 228-1, ¶ 9; 228-2, ¶ 8]. Neither Defendant was authorized to make decisions regarding

the need for physical therapy which would only be prescribed by a doctor. [ECF 228-1, ¶ 10; 228-2, ¶ 10].

Nurse Donna Lee did not have access to Sick Call Requests which were only brought to her attention by a director if she was specifically tasked with responding to a request. [ECF 228-1, ¶ 11].

Neither Nurse Donna Lee nor Nurse Karen ever avoided or failed to provide medication to Plaintiff when he had a valid prescription and the need for medication, as prescribed by a doctor. [ECF 228-1, ¶ 12; 228-2, ¶ 12].

Nurse Donna Lee did not make classification decisions and was not responsible for any decisions to move Plaintiff from one housing unit to another or from medical into general population. [ECF 228-1, ¶ 13].

Both Nurse Donna Lee and Nurse Karen have clean records with no reprimands or complaints regarding their providing medications while working at MCJ. [ECF 228-1, ¶ 14; 228-2, ¶ 14].

There is no record at the MCJ that Plaintiff ever wrote a formal complaint or grievance regarding Nurse Donna Lee or Nurse Karen for a failure to provide him prescribed medication. [ECF 228-1, ¶ 15; 228-2, ¶ 15].

A nursing expert retained by Defendants filed a report which provided the following information. While most nurses work closely with patients, LPNs do not need a graduate degree in nursing while nurse practitioners or advanced practice

6

registered nurses ("APRN") need at least a master's degree. The biggest difference between these types of nurses is the level of autonomy granted to each and whether they can see patients on their own, diagnose and treat acute illnesses, and/or prescribe medications. LPNs cannot see patients on their own or diagnose and treat acute illnesses nor can they prescribe medications, while APRNs can. *See* [ECF 228-3, pp. pp. 4-5; 228-4, ¶ 8].

Nurse Lowenberg[1] was employed as an APRN and was authorized to write medical orders and prescribe medication. [ECF 228-4, ¶¶ 2-4]. Because Nurse Karen and Nurse Donna Lee were LPNs, rather than APRNs, they were unable to prescribe medication for Plaintiff nor could they deviate from the prescriptions written for him without a medical order. *See generally* [ECF 228-3]. *See also* [ECF 228-4, ¶ 8].

Nurse Lowenberg does not recall ever hearing a complaint against Nurse Karen or Nurse Donna Lee nor was there ever a time that Nurse Lowenberg saw or heard any activity by Nurse Karen or Nurse Donna Lee which was unprofessional or below the standard of care. *See* [ECF 228-4, ¶¶ 10-13].

## 2. Plaintiff's Version of Events

On March 4, 2014, Plaintiff was arrested by several officers following a high speed car chase. [ECF 239-1, Plaintiff's Deposition, pp. 26-60]. Plaintiff alleges that

---

[1] Plaintiff named Nurse Lowenberg as a defendant in his operative complaint, however, this court did not allow the claims to go forward against her. *See* [ECF 37, 40].

when his car came to a stop, an officer smashed the driver's side window, several officers, with one "fluid motion," pulled him out of the car, slammed him face-first on the ground, and "immediately" handcuffed him. [*Id.* pp. 35-39, 56-57, 59, 60]. Officers tased him, punched him in the head, kicked him in the ribs, and deployed a police K-9. [*Id.* pp. 40-44]. Afterwards, Plaintiff was taken to the hospital where, according to his Emergency Room records, he was treated for a "head injury, dog bites, multiple puncture wounds, multiple rib fractures, multiple contusions, and abrasions of multiple sites." [ECF 252, 03/04/14 Emergency Room Medical Records, pp. 157].

On the following day, Plaintiff was discharged from the emergency room with prescriptions for Ultram and Ibuprofen for pain and an antibiotic. [*Id.* p. 11]. He was given enough pain medication to last seven days. [*Id.*]. The Emergency Room records indicated that Plaintiff was "discharged in good condition" and directing Plaintiff to "follow up with referral MD as soon as possible." [*Id.* p. 17].

Plaintiff was then transported to the MCJ where he was initially housed in the medical wing. [ECF 10, Sworn Amended Complaint, p. 16]. Two or three days later, Nurse Karen brought him to Nurse Practitioner Lowenburg for a follow-up examination. [*Id.*]. Lowenburg prescribed Ibuprofen four times a day and arranged for Plaintiff to remain in the medical wing with two mattresses and two pillows to keep him comfortable. [*Id.*]. Nurse Donna Lee gave him Ibuprofen twice a day. [*Id.*

p. 17]. However, before Plaintiff felt he was ready, Nurse Donna Lee told him, "you milked it long enough, you're going into general population." [ECF 230-13, p. 81]. He was forced to immediately move out of the medical wing. [*Id.* p. 82].

Around April 10, 2014, Nurse Karen brought him back to Nurse Practitioner Lowenburg for another examination. [ECF 10, p. 17]. Plaintiff asked Lowenburg to arrange for an MRI, however, Lowenburg concluded one was not necessary at that time. [*Id.*]. Lowenburg renewed his pain medication. [*Id.* p. 18]. In March of 2015, Lowenburg performed Plaintiff's yearly physical. [*Id.*]. He complained that his arm was still hurting and she prescribed Motrin. [*Id.*].

From March through July of 2015, Plaintiff continued to file sick-call forms. [*Id.* p. 19]. Plaintiff has provided this court with copies of these sick call forms and the responses from prison officials. [ECF 244 pp. 11-17, 32-35]. In a July 9, 2015 sick call request, Plaintiff explained that Nurse Donna Lee told him to stop trying to "milk it" regarding his pain, meanwhile, his shoulder pain has gotten worse. [ECF 244, p. 12]. The July 10, 2015 response from a member of the nursing staff, a registered nurse ("RN") named Diane, indicates that Plaintiff was placed on "Motrin protocol." [*Id.* p. 13]. In Plaintiff's July 20, 2015 sick call request, he complains of pain due to losing "about 80% of use in my left arm" following the attack during his March 2014 arrest. [*Id.* p. 14]. A "Health Care Provider" responded by renewing Plaintiff's bunk pass and prescribing Motrin five times a day for two days. [*Id.*]. In

9

Plaintiff's August 3, 2015 sick call request, he explains he is still in pain 24 hours a day, the response indicates he was prescribed Motrin five times a day for an unspecified period of time. [*Id.* p. 15-16]. Plaintiff's August 11, 2015 sick call request, complaining again of pain, includes a response indicating that he was scheduled to see the medical director regarding his complaints. [*Id.* p. 17].

On August 14, 2015, Dr. Schcognic examined Plaintiff. [ECF 10, p. 20]. Plaintiff informed the doctor that he needed an MRI. [*Id.*]. The doctor ordered an x-ray and put Plaintiff on Percogesic[2] for pain. [*Id.*]. Plaintiff saw Dr. Schcognic again on September 4, 2015, at which time, the doctor reviewed the x-ray and ordered an MRI. [*Id.* p. 20- 21].

Martin Health System Diagnostic Services took an MRI of Plaintiff's shoulder on November 6, 2015. [ECF 244-2, pp. 2-9]. The findings of the MRI provided "full-thickness tear through the distal aspect of the rotator cuff" and "the diameter of this tear is about 5MM and it extends about 90% of the thickness of the rotator cuff." [*Id.* p. 6]. The MRI also revealed "a significant amount of fluid in the acromioclavicular joint." [*Id.*].

Based on the MRI results, Dr. Schcognic referred Plaintiff to an orthopedic surgeon, Dr. Check Cam, who diagnosed the Plaintiff with "adhesive capsulitis"

---

[2] Percogesic is an over the counter pain reliever which contains Tylenol and antihistamine.

which is also known as frozen shoulder. [ECF 10, p. 21]. Dr. Cam prescribed intensive physical therapy and continued use of Percogesic as needed for pain. [*Id.*].

On December 8, 2015, Plaintiff filed a sick call request explaining that his pain medication had expired the day before. [ECF 244, p. 34]. The Health Service Administrator responded the following day that the medication had been re-ordered. [*Id.*].

Plaintiff was housed at MCJ from March 4, 2014 until July 19, 2016. [ECF 230-13, p. 64]. Plaintiff received physical therapy at MCJ until June 8, 2016. [*Id.* p. 77]. Because of his physical therapy, he is able to work out regularly and do chin ups, pushups, and dips. [*Id.* p. 63]. He also jogs. [*Id.*].

During his time at MCJ, he regularly encountered Nurse Karen and Nurse Donna Lee, usually during their medicine rounds. [*Id.* pp. 68-69]. Nurse Karen was Nurse Practitioner Lowenberg's assistant. [*Id.* p. 70]. Nurse Karen would falsely introduce Lowenberg as a "doctor." [*Id.*]. With respect to handing out medication, Nurse Karen followed the doctor's directions "at times." [*Id.* p. 71]. According to Plaintiff's deposition testimony, when a nurse is on medicine rounds at MCJ, the nurse has over-the-counter medication like Ibuprofen, Benadryl, and Tylenol which the nurse has discretion to hand out to inmates. [*Id.* pp. 71-72]. Even when Plaintiff had medication "like Percogesic" prescribed by Dr. Schcognic, Nurse Karen would "conveniently leave it off" her cart and tell him "your meds are on another cart." [*Id.*

p. 72]. However, she would never return with the medication. [*Id.*]. Nurse Karen would "very rarely" give Plaintiff his medication. [*Id.* p. 73]. Whenever Plaintiff asked Nurse Karen for Tylenol or Ibuprofen, she refused to give him any because she couldn't "take the chance of upsetting [Plaintiff's] stomach." [*Id.* p. 79].

According to Plaintiff, if medication "was prescribed and if" Nurse Donna Lee "was there, she would give it to me." [*Id.* p. 80]. She did not always give Plaintiff over-the-counter medication like Tylenol, telling him, "stop trying to milk it." [*Id.*].

## IV. Merits: Deliberate Indifference

Because the Plaintiff was not a convicted felon at the time he allegedly required medical care, the Due Process Clause of the Fourteenth Amendment, and not the Eighth Amendment applies to the deliberate indifference claim. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Jacoby v. Baldwin Cty*, 835 F.3d 1338, 1344 (11th Cir. 2016). The Due Process Clause "require[s] the responsible government or governmental agency to provide medical care to persons…who have been injured while being apprehended by police." *City of Revere*, 463 U.S. at 245-246.

The Eleventh Circuit applies the "deliberate indifference" standard to claims of improper medical care to pretrial detainees like Plaintiff. *See Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). To prove "deliberate indifference" to a serious medical need, the Plaintiff must meet three prerequisites. *Goebert v. Lee*

*Cty*, 510 F.3d 1312, 1326 (11th Cir. 2007). First, the Plaintiff must show that he had "an **objectively serious medical need**." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010). Second, the Plaintiff "must satisfy the **subjective component** by showing that the prison official acted with deliberate indifference to h[is] serious medical need." *Goebert*, 510 F.3d at 1326. Third, the Plaintiff must demonstrate "causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

An **objectively serious medical need** is one diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the need for medical treatment. *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (citations omitted). It must present "a substantial risk of serious harm," if left unattended. *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). The need of the prisoner does not have to be life threatening to be serious. *Washington v. Dugger,* 860 F.2d 1018, 1021 (11th Cir. 1988).

The **subjective component** of a deliberate indifference claim requires Plaintiff to demonstrate three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Melton v. Abston,* 841 F.3d 1207, 1223 (11th Cir. 2016). Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."

13

*Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099-1100 (11th Cir. 2014). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)(citations omitted); *Dang by & through Dang v. Sheriff, Seminole Cty Fla*, 871 F.3d 1272, 1280 (11th Cir. 2017).

### 1. Objectively serious medical need

Construing the facts in the light most favorable to the Plaintiff, the record reveals he had a serious medical need as defined by *Taylor*, 920 F.3d at 733, specifically, a "frozen shoulder" and a tear to a tendon connected to his rotator cuff. [ECF 10, p. 20; 244-2, pp. 2-9].

### 2. Subjective Component

Although Plaintiff had a serious medical need, the record evidence fails to support a conclusion that Nurses Donna Lee and Karen had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that was more than gross negligence. *Melton*, 841 F.3d at 1223.

Plaintiff complains that Nurse Karen failed to provide him with Percogesic pursuant to a prescription. Plaintiff conceded more than once during his deposition that Nurse Donna Lee would give him his prescription medication, but would fail to

use her discretion to give him Tylenol. Plaintiff also claims that Nurse Donna Lee forced him back into the general population before he was ready.

The facts in *Thomas v. Clay*, 411 F. App'x 908 (7th Cir. 2011), are similar to the facts in this case. In *Thomas*, in June of 2007, the plaintiff injured his shoulder during an attack from another detainee. *Id.* at 909. The following day a doctor examined him, ordered x-rays, and prescribed pain medication. *Id.* The x-rays revealed a six millimeter separation in his shoulder. *Id.* Nurses Clay and Morrison treated the plaintiff for approximately a year. *Id.* During this time, several doctors examined his shoulder on at least nine occasions, prescribed pain medication, and recommended physical therapy. *Id.* Clay and Morrison gave him his prescription medication and occasionally gave him Tylenol. *Id.* The plaintiff repeatedly complained that he needed shoulder surgery. *Id.* When an August 2008 x-ray revealed no change in his shoulder, the doctor referred him to a surgeon. *Id.*

In his § 1983 complaint, the plaintiff alleged that Clay and Morrison "refused to provide him with non-prescription pain medication and never referred him to doctors for treatment of his shoulder." *Id.* The Seventh Circuit concluded that summary judgment in favor of the nurses was appropriate because the plaintiff could not "point to any evidence showing that Clay and Morrison knew that his pain was so severe that denying him Tylenol—or refusing to refer him to doctors to have his prescriptions refilled—posed an excessive risk of harm." *Id.*

Like the plaintiff in *Thomas*, Plaintiff received treatment immediately after the initial attack. [ECF 252, p. 157]. Over the course of his stay at MCJ, he repeatedly received treatment from other doctors and physical therapists. *See* [ECF 10]. Even if Nurses Karen and Donna Lee failed to give him the medication he requested, the documents he attached to his response show that he was given Motrin whenever he filed a sick call request form and that his prescription was immediately refilled. [ECF 244, pp. 11-17, 32-35]. Plaintiff has failed to present evidence that Defendants knew his pain was so severe that denying his requests for medicine and/or his request to remain in the medical wing posed an excessive risk of harm. *See also Littles v. Lilly*, No. 3:10-CV-00203-MCR-EMT, 2010 WL 5399215 (N.D. Fla. 2010) (failure to state claim of deliberate indifference against nurses based on inadequate provision of pain medication); *Aurich v. Sanchez*, No. 9:08-CV-80113-DTKH, 2011 WL 5838233 (S.D. Fla. 2011) (summary judgment in favor of nurse appropriate where she did not secure suitable over-the-counter pain medicine or facilitate faster access to prescription pain medication).

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997). The "deliberate

16

indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or, prison doctors take the easier and less efficacious route in treating an inmate. *See Aldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989).

Plaintiff points to nothing in the record which demonstrates the course of treatment provided him by defendants "was so far afield [from accepted professional practice] as to allow a jury to infer deliberate indifference." *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (11th Cir. 2008). He received ongoing treatment throughout his stay at MCJ. Shortly after his arrest, he was treated at the emergency room and discharged in a good condition with prescriptions for pain and an antibiotic. [ECF 252, 03/04/14 Emergency Room Medical Records, pp. 157]. Upon his arrival at MCJ, Nurse Lowenburg prescribed Ibuprofen, four times a day, and arranged for him to remain in the medical wing with two mattresses and two pillows. [ECF 10, pp. 16-17]. At an April 10, 2014 appointment, Nurse Lowenberg renewed his pain medication. [*Id.* p. 18].

According to sick call forms filed by Plaintiff, he was prescribed Motrin, five times a day for several days, on July 10, July 20, and August 3, 2015. [ECF 244, pp. 11-17, 32-35]. Prison officials scheduled an appointment with Dr. Schcognic in response to Plaintiff's August 11, 2015 sick call request. [*Id.* p. 17]. At an August

17

14, 2015 appointment, Dr. Schcognic ordered an x-ray and prescribed Percogesic for pain. [ECF 10, p. 20]. Martin Health System Diagnostic Services took an MRI of Plaintiff's shoulder on November 6, 2015, finding a tear to the rotator cuff and fluid. [ECF 244-2, pp. 2-9]. Based on the MRI results, Dr. Schcognic referred Plaintiff to an orthopedic surgeon, Dr. Check Cam, who diagnosed the Plaintiff with adhesive capsulitis, prescribed intensive physical therapy, and prescribed continued use of Percogesic as needed for pain [ECF 10, p. 21]. Upon receiving a sick call request on December 8, 2015 that Plaintiff had run out of his pain medication, MCJ Heath Services Administrator re-ordered the medication. Plaintiff received physical therapy at MCJ until June 8, 2016. [*Id.* p. 77]. He left MCJ the following month.

The undisputed facts narrated above further confirm that Plaintiff's conditions were never ignored, and it cannot be said that the Defendants were deliberately indifferent. Indeed, the record provided by Plaintiff reflects that he had constant access to and was provided ongoing medical care arising from all of his complaints. It is clear that the care Plaintiff received was more than adequate. Plaintiff has failed to provide sufficient evidence to support his claims of deliberate indifference against Nurses Donna Lee and Karen. *See, e.g., Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995) (exercise of medical judgment is an inappropriate basis for Section 1983 liability).

Construing the facts in the light most favorable to the Plaintiff, as the non-moving party, Plaintiff has provided insufficient evidence that Defendants Karen and Donna Lee were deliberately indifferent to his serious medical needs. Thus, summary judgment in favor of Defendants is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## V. Conclusion

It is, therefore, recommended that Defendant's motion for summary judgment [ECF 228] be **GRANTED**, all claims against Defendants Karen and Donna Lee be dismissed with prejudice, and Defendants Karen and Donna Lee be dismissed from these proceedings.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 30th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc: **Neal H. Bochner**
394887
Lake Correctional Institution
Inmate Mail/Parcels
19225 US Highway 27
Clermont, FL 34715
PRO SE

**Louis Reinstein**
Kelley Kronenberg
10360 West State Road 84
Ft. Lauderdale, FL 33324
954-370-9970
Fax: 954-382-1988
Email: lreinstein@kklaw.com

**Gregory James Jolly**
**Bruce Wallace Jolly**
Purdy, Jolly, Giuffreda, & Barranco, P.A.
2455 E Sunrise Boulevard
Suite 1216
Fort Lauderdale, FL 33304
 (954) 462-3200
Fax: (954) 462-3861
Email: greg@purdylaw.com
Email: bruce@purdylaw.com

**Jeffrey Alan Blaker**
**Matthew Joseph Wildner**
Conroy, Simberg, & Ganon
1801 Centrepark Drive East
Suite 200
West Palm Beach, FL 33401
(561) 697-8088
Fax: (561) 697-8664
Email: jblaker@conroysimberg.com
Email: mwildner@conroysimberg.com