UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-14422-ROSENBERG
MAGISTRATE JUDGE REID

NEAL H. BOCHNER,

            Plaintiff,

v.

MARTIN COUNTY, et al.,

        Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE RE:
## DEFENDANTS' MOTIONS FOR FINAL SUMMARY JUDGMENT
### [ECF 231, 238]

### I. Introduction

The incarcerated Plaintiff, **Neal H. Bochner**, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 regarding events surrounding his March 4, 2014 arrest. [*Id.*]. At issue are motions for summary judgment filed by Martin County Sheriff Office ("MCSO") Officers Albauer, Beath, Bundy, Kritchie, Libasci, Maltese, Pfeifle, Tison, and Waltersdorff ("MCSO Defendants") [ECF 231] and by Stuart Police Officers Huffman, Kelsay, Edens, Martin, and Cernuto ("Stuart Defendants"). [ECF 238].

The Magistrate Judge previously issued a report recommending that (1) the excessive use of force claims proceed against Officers Albauer, Libasci, Maltese,

Tison, and Kritchie and (2) the failure to intervene claims proceed against Officers Beath, Bundy, Cernuto, Edens, Huffman, Kelsay, Martin, Pfeifle, Waltersdorff. [ECF 37]. The district court adopted the report's recommendations. [ECF 40].

MCSO Defendants have filed a motion for summary judgment [ECF 231] and a statement of material facts. [ECF 230]. MCSO Defendants filed the following supporting exhibits: 03/04/14 Port St. Lucie Police Department Incident Report [ECF 230-1], 03/04/14 MCSO's Offense Incident Report [ECF 230-2], Affidavit of James Maltese [ECF 230-3], Affidavit of Leslie Beath [ECF 230-4], Affidavit of Michael Libasci [ECF 230-5], Affidavit of Brian Tison [ECF 230-6], Affidavit of Justin Albauer [ECF 230-7], Affidavit of Kevin Kritchie [ECF 230-8], Amended Information against Plaintiff [ECF 230-9], Plaintiff's Judgment and Sentence [ECF 230-10], Transcript of Plaintiff's Change of Plea Hearing [ECF 230-11], Plaintiff's 3/4/14 Arrest Affidavit [ECF 230-12], and Transcript of Plaintiff's March 1, 2019 Deposition [ECF 230-13].

The Stuart Defendants also filed a motion for summary judgment [ECF 238] and statement of material facts [ECF 239]. In support thereof, the Stuart Defendants filed: Transcript of Plaintiff's March 1, 2019 Deposition [ECF 239-1]; St. Lucie Police Department's March 4, 2014 Offense Incident Report #2014-00482 [ECF 239-2]; Affidavit of Matthew Cernuto [ECF 239-3], Affidavit of Stephen Edens [ECF 239-4]; and Plaintiff's State Court Judgment and Sentence [ECF 239-5].

Defendants argue (1) that the undisputed material facts demonstrate that the force used was objectively reasonable and there was no need to intervene, (2) that they are entitled to qualified immunity, and (3) that the claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [ECF 231, pp. 1-2; 238, pp. 3-7]. Stuart Officers Edens and Cernuto specifically argue they were not in a position to observe or halt any potential excessive force. [ECF 238, p. 7].

Plaintiff filed a response in opposition to the MSCO Defendants [ECF 252] and the Stuart Defendants [ECF 253] with the following exhibits attached: Amended information [ECF 252, pp. 1-3; 253, pp. 13-16]; Change of plea/sentencing documents [ECF 252, pp. 4-17] Police reports, Defendants' admissions and affidavits [ECF 252, pp. 18-75; 253-1, pp. 9-14]; Photographs of his vehicle [ECF 252, pp. 76-77]; Officer Maltese's 2014 Deposition Transcript [ECF 252, pp. 78-117]; Photographs of Plaintiff's injuries [ECF 252, pp. 118-147; 253-1, p. 15-20]; Plaintiff's medical records [ECF 252, pp. 148-226]; and Plaintiff's sworn affidavits in opposition to summary judgment. [252-1, pp. 227-30; 253-2, p. 4-6]. Defendant filed replies to Plaintiff's responses. [ECF 254, 255].

The issue the court must decide is whether Plaintiff's claims of excessive use of force and failure to intervene are barred by the fact that he was convicted in state court of resisting an officer with violence. For the reasons explained in this Report, Plaintiff's claims are not barred, and the Undersigned recommends that both the

MCSO and the Stuart Defendants' motions for summary judgment [ECF 231, 238] be denied and the case proceed to trial.

## II. Standard of Review

### A. Law Pertaining to §1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) defendant(s) deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must further allege and establish an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1039 (11th Cir. 2001).

### B. Law Pertaining to Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).

Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Id.* (relying upon *Anderson*, 477 U.S. at 248). In sum, "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party, courts should deny summary judgment." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).

In the summary judgment context, courts must still construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002). Notwithstanding, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c)" courts may consider the fact undisputed for purposes of the motion and grant summary judgment if the facts in the record—including those considered undisputed— illustrate that the movant is entitled to judgment in its favor. Fed. R. Civ. P. 56(e)(2).

### III. Facts

### 1. Undisputed Facts

The incident which resulted in Plaintiff's arrest and conviction in Florida's Nineteenth Judicial Circuit, Martin County, Florida, case no. 14-260CF, took place on March 4, 2014. Defendant Maltese executed an **arrest affidavit** which contained the following facts. [ECF 230-12; 239-2; 252, pp. 18-24]. MCSO dispatch informed MCSO Deputy Sheriffs Maltese and Pfeifle that Plaintiff was driving a stolen Ford Expedition southbound on NW Federal Highway. [ECF 230-12, p. 2; 239-2, p. 2; 252, p. 19]. Upon locating the Ford, the officers initiated lights and sirens in an attempt to conduct a traffic stop. [*Id.*]. The Plaintiff swerved in and out of traffic,

drove recklessly at a high rate of speed, reached 105 MPH in a 45 MPH zone, and ran several red lights without slowing down. Plaintiff made a right turn onto Wright Boulevard, slammed on his breaks, and swerved his car into Maltese's police cruiser. [*Id.*]. Plaintiff then drove into oncoming traffic several times in an attempt to evade the officers. [*Id.*]. Plaintiff next turned south on Dixie Highway. Maltese attempted a PIT (Pursuit Intervention Technique) maneuver on Plaintiff's vehicle. [*Id.*]. Plaintiff responded by slamming on his breaks, causing Maltese to hit the rear of the Ford. [*Id.*]. Plaintiff continued south on Dixie Highway while swerving into Maltese's patrol car several times. Plaintiff hit speeds of 70 MPH in a 35 MPH zone and continued driving into oncoming traffic. [*Id.*]. Plaintiff next turned onto Colorado Avenue. [*Id.*]. When he attempted to turn back onto Federal Highway, Maltese conducted another PIT maneuver which caused Plaintiff to lose control of the car and drive through a 7-11 gas station. [*Id.*]. Plaintiff tried to get back on Colorado, at which point, Pfeifle struck the passenger side of the Ford with his patrol car. [*Id.*]. The Ford spun backwards, striking the curb. [*Id.*]. A Stuart Police Department patrol car struck the Ford, causing it to stop. [*Id.*].

Plaintiff "at this point, continued to put the Expedition in drive, but the vehicle was stuck on the curb and [Officer] Beath blocked the vehicle in" with her marked MCSO police cruiser. [ECF 230-12, pp. 2-3; 239-2, pp. 2-3; 252, pp. 19-20]. Plaintiff "was given commands from several deputies on scene to put the car in park.

Plaintiff refused to put the car in park and continued to sit in the vehicle." [ECF 230-12, p. 3; 239-2, p. 3; 252, p. 20].

After officers broke the driver's side window, Plaintiff continued to refuse to exit the vehicle. [*Id.*]. Plaintiff was removed from the vehicle. [*Id.*]. Plaintiff "began to resist arrest and refused to put his hands behind his back." [*Id.*]. He tensed up, putting his hands under his body. [*Id.*]. He attempted to kick and resist in a physical manner. [*Id.*]. Maltese twice attempted to drive-stun Plaintiff with a taser gun. [*Id.*]. K-9 Deputy Kritchie deployed his dog in order to control Plaintiff. [*Id.*]. Afterwards, deputies "were finally able to arrest Plaintiff." [*Id.*]. The arrest affidavit indicated that officers arrested Plaintiff for several crimes including "resisting officer with violence." [*Id.*].

On July 7, 2016, the state filed an **amended information** against the Plaintiff charging him with grand theft-motor vehicle (count 1); high speed or wanton fleeing (counts 2 and 6); aggravated assault on law enforcement officer (count 3); resisting an officer with violence (count 4); use or possession of drug paraphernalia (count 5); and driving while license permanently revoked (count 7). [ECF 230-9; 252, pp. 1-3]. Relevant here, the charging document alleged under count 4 that Plaintiff "did knowingly and willfully resist, obstruct or oppose Michael Libasci, a duly authorized law enforcement officer in the lawful execution of the officer's legal duty by offering

or doing violence to the person of said officer," in violation of Fla. Stat. § 843.01.
[ECF 230-9, p. 1; 252, p. 1].

The trial court conducted a **change of plea hearing** during which the following exchange took place, after the Plaintiff was placed under oath,

> **The Court**: I will find a factual basis for your case as I did review the Affidavit in depth preparing for a possible trial in your case. So there is a factual basis for those charges. And are you entering this plea of your own free will?
>
> **Plaintiff**: No contest, yes, sir.

[ECF 230-11, p. 8; 252, p. 12]. The trial court referred only to "the Affidavit," not the arrest affidavit. *See* [*Id.*]. The court did not identify the affiant by name, the date it was executed, or provide any other details.

The court accepted Plaintiff's plea as voluntary; adjudicated him guilty of high speed or wanton fleeing (count 2), resisting an officer with violence (count 4), possession of drug paraphernalia (count 5), and driving while license permanently revoked (count 7); and sentenced him to eight years in prison. [ECF 230-11, p. 10-11; 252, p. 14-15]. The court's rulings during the hearing are reflected in the **judgment and sentence**. [ECF 230-10; 239-5; 253, Ex. C]. Plaintiff's conviction for resisting an officer with violence has not been overturned. [ECF 239-1, p. 84].

### 2. MCSO Defendants' Version of Events

On March 4, 2014, Angela Russian called 911 after discovering that Plaintiff had taken her vehicle without her permission. [ECF 230-1, p. 3]. While en route,

Port St. Lucie Police Officer Byrne was notified that a citizen had called 911 to report a possible drunk driver in a vehicle that matched the description of the vehicle that Ms. Russian had reported stolen, a white Ford Expedition. [*Id.*]. Officer Byrne eventually located the suspect vehicle, which ignored the officer's emergency lights. [*Id.*]. Officer Byrne discontinued his pursuit when Plaintiff entered Martin County and MCSO was notified. [*Id.*].

Around 8:30 p.m., MCSO Deputies Pfeifle and Maltese located the Ford Expedition and attempted to initiate a traffic stop. [ECF 230-2, p. 2]. [*Id.*]. Instead of stopping, Plaintiff began swerving in and out of traffic, ran several red lights, exceeded the speed limit, and at times traveled on the wrong side of the road. [*Id.*]. Deputy Pfeifle successfully caused the Plaintiff to lose control of his vehicle at which point the car was pinned in by other law enforcement vehicles. [ECF 230-3, ¶ 6].

Once the vehicle came to a stop, officers gave Plaintiff multiple commands to put his car in park and to exit the vehicle. [ECF 230-3, ¶ 7; 230-4, ¶ 6; 230-5, ¶ 4; 230-6, ¶ 4]. After failing to exit the vehicle, Deputy Libasci used his baton to break the driver's side window and the officers pulled the Plaintiff from the vehicle. [ECF 230-3, ¶ 8; 230-4, ¶ 5; 230-5, ¶ 5; 230-6, ¶ 5].

After being pulled from the vehicle, Plaintiff refused to put his hands behind his back, kicked the deputies, and resisted the deputies' efforts to place him in

handcuffs and take him into custody. [ECF 230-3, ¶ 9; 230-4, ¶ 6; 230-5, ¶ 6; 230-6, ¶ 6].

Due to the Plaintiff's actions and a concern that he was attempting to retrieve a concealed weapon, Deputy Libasci drive-stunned the Plaintiff twice on the Plaintiff's lower body with a taser. [230-5, ¶ 7]. Deputy Albauer twice drive-stunned the Plaintiff's lower back with his taser. [ECF 230-7, ¶ 5]. Deputy Maltese likewise delivered two drive stuns with his taser to the Plaintiff's lower back in an effort to gain compliance from the Plaintiff. [ECF 230-3, ¶ 10]. Deputy Tison delivered multiple closed fist strikes to the Plaintiff's head in an effort to distract the Plaintiff from the deputies who were attempting to handcuff him. [ECF 230-6, ¶ 5].

Deputy Fritchie identified himself to the Plaintiff, announced the presence of his K-9 partner Kwai, and ordered the Plaintiff to cease his resistance. [ECF 230-8, ¶ 4]. When the Plaintiff continued to resist, Deputy Fritchie deployed his K-9 who bit the Plaintiff on his upper left arm. [*Id.* ¶ 5]. After the K-9 bit the Plaintiff, he ceased his violent resistance and Deputy Beath was able to place him in handcuffs. [ECF 230-8, ¶ 5; 230-4, ¶ 7]. After the Plaintiff was handcuffed, no force was utilized against him. [ECF 230-4, ¶ 8; 230-5, ¶ 9; 230-6, ¶ 7; 230-8, ¶ 5].

### 3. Stuart Defendants' Version of Events

The statement of facts provided by the Stuart Defendants is consistent with the MSCO Defendants' statement of facts. The only new information provided by

the Stuart Defendants comes from affidavits executed by Officers Cernuto and Edens. Stuart Defendants Huffman, Kelsay, and Martin did not submit affidavits and the Stuart Defendants' statement of facts provided does not mention these officers by name.

Officers Cernuto and Edens responded to the call but did not participate directly in Plaintiff's apprehension. [ECF 239-3, p. 5; ECF 239-4, p. 5]. Rather, they were between five and thirty feet away. [*Id.*]. Because it was dark and officers were blocking their view, Officers Cernuto and Edens claim they could not observe the exact degree of force other officers were exerting on Plaintiff and/or any potential threats or resistance offered by the Plaintiff. [ECF 239-3, p. 6; ECF 239-4, p. 6].

### 4. Plaintiff's Version of Events

On the date of the incident, Plaintiff was living with his girlfriend. [ECF 239-1, Plaintiff's Deposition, pp. 14]. He spent the day watching tv and drinking a couple vodka cocktails. [*Id.* pp. 14-16]. After Ms. Russian came home, they got in an argument around 8:00 p.m. [*Id.* p. 18-19]. As a result, he decided to drive to Miami and stay with a friend. [*Id.* p. 19]. He left in "his" 1997 Ford Expedition which was in Ms. Russian's name only because, as an individual with six prior DUI convictions, Plaintiff could not register a car in his own name in Florida. [*Id.* pp. 20-21]. Plaintiff's license had been suspended since the early 1990s. [*Id.* p. 21]. Ms. Russian called 911 and reported her Ford Expedition stolen. [*Id.* pp. 24-25].

Shortly after he left, he noticed police lights and attempted to escape because he did not have a valid license. [*Id.* pp. 25-26]. In order to avoid being pulled over by the police, Plaintiff made turns, drove through red lights, drove into oncoming traffic, and weaved in and out of traffic. [*Id.* pp. 28, 30-31]. Almost twenty cop cars were involved in the chase. [*Id.* p. 30-31]. Officer Maltese PIT maneuvered him into oncoming traffic. [*Id.* p. 31].

Plaintiff's car ended up in a 7-11 parking lot. [*Id.* p. 32]. One officer "T-boned" one side of his car while other cop cars pinned him in. [*Id.*]. Officers surrounded him, pointed their guns, and ordered him to show his hands. [*Id.*]. Plaintiff left his hands on the steering wheel. [*Id.*]. At one point, he hit the gas while his car was pinned in by the patrol cars. [*Id.* p. 34].

After someone smashed the driver's side window, several officers, with one "fluid motion," pulled him out, slammed him face-first on the ground, and "immediately" handcuffed him. [*Id.* pp. 35-39, 56-57, 59, 60].

While he was handcuffed, "seconds later," the officers began to deploy their tasers. [*Id.* p. 39]. The officers continuously "tased, drive stunned, and prong fired." [*Id.* p. 40]. Albauer, Libasci, and Maltese all took part in tasing Plaintiff. [ECF 252, p. 2-3]. At the hospital later, four taser prongs were removed from his back. [ECF 239-1, p. 41].

Officer Tison punched Plaintiff in the face hard enough to break his hand. [*Id.* p. 40]. Officer Martin used his knee to strike Plaintiff in the neck and shoulder. Officer Martin also kicked Plaintiff in the ribs, breaking four ribs. [*Id.* p. 41]. The officers were kicking him, jumping on him, punching him, and tasing him, all at the same time. [*Id.* pp. 42, 57]. Plaintiff never punched, kicked, or struck the officers. [*Id.* 57]. He did not know exactly where Officers Cernuto, Huffman, or Kelsay were during the attack. [*Id.* p. 54]. However, they were present on the scene, along with Officers Beath, Edens, Pfeifle, and Waltersdorff. [ECF 252, p. 2].

According to Plaintiff, the officers then released the K-9, which first bit Officers Tison and Libasci. [*Id.* p. 43]. The Plaintiff believes that the K-9 thought those officers were the attackers, in light of their actions towards Plaintiff. [*Id.*]. The K-9 then bit the Plaintiff "countless" times all over his body. [*Id.* p. 44]. The officers kept "repositioning" the dog so he could bite Plaintiff in different spots on his body. [*Id.* pp. 44-45].

Plaintiff was transported to the hospital. [*Id.* p. 47]. Plaintiff provided this court with photographs documenting his extensive injuries from the tasers and the dog bites. [ECF 252, pp. 118-147; 253-1, p. 15-20]. The medical records generated by Martin Health System in connection to Plaintiff's treatment on March 4, 2014 indicate that when he arrived at the ER he was suffering from a "closed head injury,

dog bites, multiple puncture wounds, multiple rib fractures, multiple contusions, and abrasions of multiple sites." [ECF 252, pp. 157].

Plaintiff testified at his deposition that his conviction for resisting an officer with violence was a direct result of his actions while still in the vehicle. [ECF 239-1, p. 49]. He provided this court with Officer Maltese's August 12, 2014 deposition transcript taken in Plaintiff's criminal proceedings, case no. 14-260CF. [ECF 252, pp. 78-117].

During the criminal case deposition, Officer Maltese testified that when he was chasing Plaintiff's Ford, Plaintiff tried to hit Maltese's police cruiser several times, while swerving in and out of traffic. [*Id.* p. 88]. At one point, Plaintiff turned and immediately slammed on his breaks, causing the front of Maltese's car to crash into Plaintiff's rear. [*Id.* p. 98]. Once the police had Plaintiff's Ford pinned in with their police cruisers, Maltese exited his car and ran up to the driver's side door. [*Id.* p. 103]. Plaintiff was surrounded by officers who were all ordering him to exit the car. [*Id.*]. Plaintiff ignored the commands while trying to put his vehicle in drive or reverse. [*Id.*]. Plaintiff continued to push down on the gas which caused the wheels to spin. [*Id.* p. 105]. The wheels made a "divot" on the ground from "him trying to get off the curb, as he continued to drive." [*Id.*]. Maltese positioned himself in between Plaintiff's car and Maltese's police cruiser. [*Id.* p. 106]. Because he was in a "terrible position," assuming Plaintiff managed to get his car free, Maltese drew

his service weapon. [*Id.* p. 106]. Officer Libasci was also right next to Plaintiff's car. [*Id.*].

Officers Albauer and Libasci broke the window and removed Plaintiff from the car. [*Id.*]. Plaintiff refused to release his hands from under his body for handcuffing. [*Id.* p. 108]. Maltese deployed his taser, while Officer Tison struck Plaintiff in the head. [*Id.* p. 111]. Because pain compliance techniques were not working, Officer Kritchie released his K-9. [*Id.* pp. 112]. With the help of the dog, the officers were able to place Plaintiff in handcuffs. [*Id.* p. 113].

## IV. *Heck* Bar

All of the Defendants argue that summary judgment in their favor is proper because the excessive force and failure to intervene claims are *Heck* barred. [ECF 231, pp. 20-23; 239, pp. 3-7].

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

*See also Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1212 n.7 (11th Cir. 2016).

Accordingly, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. On the other hand, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

**Here**, the parties dispute which facts supported his resisting an officer with violence conviction, the events which took place after officers pulled Plaintiff from the car or the Plaintiff's actions while still in the car. If the state conviction was supported by Plaintiff's actions outside the car where Plaintiff claims the excessive force/failure to intervene occurred, then his claim would indeed be *Heck*-barred. A finding by this court that Plaintiff was handcuffed immediately, making it impossible to resist an officer with violence, would invalidate his state court conviction. However, if the Plaintiff's conviction was based on his ignoring official commands from inside the car, while continuing to attempt to accelerate, a judgment against

Defendants for excessive force/failing to intervene would not invalidate the state court conviction. On these facts, Plaintiff's conviction could have been based on either set of events.

The amended information charged Plaintiff with "knowingly and willfully resist[ing], obstruct[ing[, or oppos[ing]" Officer Libasci, who was "a duly authorized law enforcement officer in the lawful execution of [his] legal duty by offering or doing violence to the person of said officer" in violation of Fla. Stat. § 843.01 (2014). [ECF 230-9, p. 1; 252, p. 1]. The charging document tracked the language of the statute which provides:

> Whoever knowingly and willfully resists, obstructs, or opposes any officer . . . in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree . . . .

Fla. Stat. § 843.01.

Florida courts have repeatedly upheld convictions for resisting an officer with violence in cases where the defendant used or threatened to use a vehicle to do violence to an officer. In *Yarusso v. State*, 942 So. 2d 939, 943 (Fla. 2d DCA 2006). Florida's Second District Court of Appeal explained that under Fla. Stat. § 843.01, "the State must prove that the defendant (1) knowingly (2) resisted, obstructed, or opposed a law enforcement officer (3) who was in the lawful execution of any legal duty (4) by offering or doing violence to his person." The state presented evidence

that the defendant "jumped into the driver's seat, locked the door, started the truck, and began backing up." *Id.* at 941. When the officer told him to stop, the defendant "put his truck in drive and sped off, hitting [the officer's] hand with the truck's rearview mirror in the process." *Id.* The court held that an act of violence occurred when the defendant fled from the officers in his car. *Id.* p. 942.

In *Swilley v. State*, 845 So. 2d 930, 931 (Fla. 5th DCA 2003), the court upheld a conviction for resisting with violence under Fla. Stat § 843.01. The defendant "placed his car in reverse and then drove it towards one officer and then into a vehicle occupied by another officer in an attempt to avoid arrest." *Id.* at 932-33. *See also Austin v. State*, 852 So. 2d 898, 899 (Fla. 5th DCA 2003) (upholding conviction under Fla. Stat. § 843.01 where, during a valid traffic stop, defendant started driving backwards when an officer was standing next to the open driver's side door, dragging the officer along with the car and then knocking the officer to the ground).

The facts in the arrest affidavit, on which the trial court appeared to rely[1] when adjudicating Plaintiff guilty of resisting with violence under Fla. Stat. § 843.01, included sufficient facts based on Plaintiff's actions while he was s*till in the car* to support the conviction. Specifically, after Plaintiff's car was pinned in by several police cruisers, he knowingly and willfully "continued to put the Expedition in

---

[1] The trial court referred only to "the Affidavit" not the arrest affidavit. The court did not identify the affiant by name, the date it was executed, or provide any other details.

drive" thereby "offering" to do violence to Officer Libasci who was right next to the car, executing a lawful duty to arrest Plaintiff after a high speed chase.

The facts Officer Maltese testified to during the 2014 deposition further support the position that Plaintiff's actions inside the car were sufficient to support a resisting with violence conviction. [ECF 252]. Maltese testified that while the Plaintiff was pinned in, he repeatedly pushed the gas, which caused the wheels to spin and make "divots" in the curb, while multiple officers stood around the car ordering him to submit to an arrest. [*Id.* pp. 105-06].

Both Plaintiff and Defendants relied on *Dyer v. Lee*, 488 F.3d 876 (11th Cir. 2007) in support of their *Heck* bar argument. In *Dyer*, 488 F.3d at 877, the plaintiff left a restaurant and, while intoxicated, sat down in the driver's seat of her husband's car outside. The restaurant's owner called her a cab and called the police to make sure she did not drive drunk. *Id.* When officers arrived, she refused a field sobriety test and said, "go ahead and arrest me." *Id.* They pulled her out of the car and handcuffed her hands behind her. *Id.* She became agitated and kicked Officer Humann in the leg. *Id.* at 878. Officers told her she was also under arrest for battery on a police officer and placed her in the back of the patrol car. *Id.* The plaintiff managed to get her handcuffed hands in front of her body. *Id.* Officer Humann pulled her from the car to handcuff her behind her back once again. *Id.* The plaintiff alleged that during "this recuffing the defendants shoved her against the car, slammed her

head against the car, kneed her in the leg and lower back, and sprayed her with pepper spray." *Id.* The plaintiff kicked the deputies during the recuffing. *Id.* Humann used an unauthorized cuffing technique to subdue her and put her back in the patrol car. *Id.* After the altercation came to an end and Plaintiff was quietly waiting in the patrol car, Humann opened the car door and again sprayed the plaintiff with pepper spray. *Id.* She subsequently pled no contest to resisting with violence under § 843.01. *Id.*

Applying *Heck*, the Eleventh Circuit held that the § 843.01 conviction could have been supported solely by the plaintiff's first kick to Officer Humann's leg during her arrest for DUI. *Id.* at 882. Upon noting that the alleged excessive force "did not occur until well after that point, when she had already been handcuffed, placed in the patrol car, and then removed from the patrol car," a successful 1983 suit for excessive force would not invalidate the plaintiff's state court conviction. *Id.* The court noted that "so long as the last act in the altercation was one of excessive force by the police, a § 1983 suit on that basis would not negate the underlying conviction." *Id.* at 882-83.

Based upon the Plaintiff's allegation that he was immediately handcuffed, like the plaintiff in *Dyer*, the Defendants' alleged excessive force/failure to intervene did not occur until after the officers pulled Plaintiff from the car and placed him in handcuffs. Plaintiff's earlier attempts to accelerate his car while pinned in, when

officers were standing around the car, had come to an end. The Defendants'
subsequent actions constituted a separate event that could serve to support Plaintiff's
claims in this case.

Defendants make an argument similar to the *Heck*-bar argument based on
collateral estoppel. [ECF 231, pp. 8-12]. However, this argument also fails because
Plaintiff's state court conviction did not necessarily rely on a state court finding that
he refused to submit to handcuffs immediately upon being pulled from the car.

In light of the foregoing dispute of fact, summary judgment in favor of
Defendants pursuant to *Heck* is not appropriate. A successful § 1983 suit will not
invalidate Plaintiff's state court conviction under Fla. Stat. § 843.01.

### V. Excessive Force/Failure to Intervene

### 1. Applicable Law

The Eleventh Circuit has long acknowledged that "[c]laims involving the
mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth
Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and
Unusual Punishment Clause, which applies to convicted prisoners." *Bozeman v.
Orum*, 422 F.3d 1265 (11th Cir. 2005).

In *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015), the United States
Supreme Court noted that "[t]he language of the two Clauses differs, and the nature
of the claims often differs. And, most importantly, pretrial detainees (unlike

convicted prisoners) cannot be punished at all." *see Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989) (the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment); *Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (in the absence of an intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose.").

The excessive force inquiry for pretrial detainees includes two separate state-of-mind questions: (1) "the defendant's state of mind with respect to his physical acts – i.e., his state of mind with respect to the bringing about of certain physical consequences in the world" and (2) "the defendant's state of mind with respect to whether his use of force was 'excessive.'" *Kingsley*, 135 S. Ct. at 2472.

With regard to the first question, the *Kinglsey* Court assumed that the defendant must possess a purposeful, knowing, or possibly reckless state of mind; noting that accidental or negligent conduct would not suffice. *Id.* at 2472. In connection with the second question, "a pretrial detainee must show only that the force purposefully or knowingly used against him was **objectively unreasonable**." *Id.* at 2473 (emphasis added). This standard cannot be applied mechanically, rather, objective reasonableness turns on the facts and circumstances in each individual case. *See Graham*, 490 U.S. at 396. A court must make this determination from the

perspective of a reasonable officer on the scene without the benefit of 20/20 hindsight. *Id.*

Questions that may bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *See Graham*, 490 U.S. at 396.

If an officer, whether supervisory or not, **fails to intervene** or refuses to take reasonable steps to protect the victim of another officer's use of excessive force, the officer may be held liable for the other officer's malfeasance under §1983. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (citing *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007)). The non-intervening officer must, however, have been in a position to intervene yet failed to do so. *See id.* at 1331 (citation omitted).

### 2. Application to Facts

The facts put forth by Plaintiff regarding the severe attack, carried out by Officers Albauer, Libasci, Maltese, Tison, Martin, and Kritchie, of a face-down, handcuffed individual clearly constitutes excessive force of a pre-trial detainee. *See Kingsley*, 135 S. Ct at 2472.

According to the Plaintiff, after an officer smashed the driver's side window, several officers, with one "fluid motion," pulled him out of the car, slammed him face-first on the ground, and "immediately" handcuffed him. [ECF 231-13, Plaintiff's Deposition, pp. 35-39, 56-57, 59, 60]. Meanwhile, the Defendants assert that Plaintiff concealed his hands under his body until after the K-9 forced the Plaintiff to submit to be handcuffed.

Officer Albauer, Libasci, and Maltese then continuously "tased, drive stunned, and prong fired" his body. [*Id.* p. 40]. Officer Tison punched Plaintiff in the face so hard that Tison broke his hand. [*Id.*]. Officer Martin kicked Plaintiff in the ribs, breaking four ribs. [*Id.* p. 41]. Officer Kritchie released his K-9, who bit Plaintiff "countless" times all over his body. [*Id.* p. 44].

Plaintiff could not say exactly where each officer was standing during the attack, as his face was pushed against the ground, but Officers Edens, Cernuto, Huffman, Kelsay, Beath, Pfeifle, and Waltersdorff were all present on the scene. [*Id.* p. 54; ECF 252, p. 2]. Defendants Edens and Cernuto filed sworn statements alleging they could not see the attack and were not in a position to intervene. [ECF 239-3; 239-4]. Both Defendants allege they were five to thirty feet away, it was dark out, and other officers obstructed their view. [*Id.*]. Plaintiff counters that the 7-11 parking lot was well lit. He also asserts that the attack by the other officers went on for a

while, giving Edens and Cernuto ample time to see what was happening and intervene if necessary. [ECF 253, pp. 2-4, 10-12].

Plaintiff went to the hospital where he was treated for a head injury, dog bites, multiple puncture wounds, multiple rib fractures, multiple contusions, and abrasions of multiple sites." [ECF 252, pp. 157].

It follows that the failure of Officers Beath, Bundy, Pfeifle, Waltersdorff, Huffman, and Kelsay to intervene to stop the excessive use of force also constituted a violation of Plaintiff's constitutional rights. *See Hadley*, 526 F.3d at 1330. This is also true of Defendants Edens and Cernuto who do not dispute that they were at the scene, as close as five feet from the prolonged attack by the other officers. Construing the Plaintiff's facts as true, Edens and Cernuto had reason to investigate whether the force was justified.

An attempt to resolve the facts in dispute would require the court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in *Anderson v. Liberty Lobby, Inc.*, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." 477 U.S. 242, 255 (1986) (*citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Due to the existence of genuine issues of material fact, summary disposition of the § 1983 excessive force/failure to intervene claims is not appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI. Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances the competing but equally important goals of affording officials immunity from suit for reasonable actions taken within the scope of their duties and holding those officials responsible who abuse their power. *See id.*

A court must grant qualified immunity unless the facts taken in the light most favorable to Plaintiff show: (1) that there was a **violation of the Constitution** and (2) that the illegality of Defendant's actions was **clearly established** at the time of the incident. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).

In *Pearson*, the Supreme Court ruled that a court may decide, in its discretion, "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case." *Pearson*, 555 U.S. at 236. Once an official proves that he was acting within his discretionary authority, the

burden shifts to the plaintiff to prove that the official's acts violated clearly established law of which a reasonable person would have known. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).

The Eleventh Circuit has held that "[a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, ... (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, ... or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

There was a clearly established constitutional law at the time of the alleged violation, namely, the right to be free from excessive force. *See Graham v. Conner*, 490 U.S. 386, 395 n.10 (1989). As is discussed in detail above, a genuine issue of material fact exists regarding whether the force was excessive and whether officers failed to intervene to stop the attack. As a result, summary judgment in Defendants' favor based on qualified immunity is not appropriate.

## VII. Conclusion

Based upon the foregoing, it is recommended that

(1) The motion for summary judgment filed by MSCO Defendants Albauer, Beath, Bundy, Kritchie, Libasci, Maltese, Pfeifle, Tison, and Waltersdorff [ECF DE# 231] be DENIED.

(2) The motion for summary judgment filed by Stuart Defendants Huffman, Kelsay, Edens, Martin, and Cernuto [ECF 238] be DENIED.

(3) The case go forward to trial against these defendants.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

DONE AND ORDERED at Miami, Florida, this 30th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   **Neal H. Bochner**
      394887
      Lake Correctional Institution
      Inmate Mail/Parcels
      19225 US Highway 27
      Clermont, FL 34715
      PRO SE

**Gregory James Jolly**
**Bruce Wallace Jolly**
Purdy, Jolly, Giuffreda, & Barranco, P.A.
2455 E Sunrise Boulevard
Suite 1216
Fort Lauderdale, FL 33304
 (954) 462-3200
Fax: (954) 462-3861
Email: greg@purdylaw.com
Email: bruce@purdylaw.com

**Jeffrey Alan Blaker**
**Matthew Joseph Wildner**
Conroy, Simberg, & Ganon
1801 Centrepark Drive East
Suite 200
West Palm Beach, FL 33401
(561) 697-8088
Fax: (561) 697-8664
Email: jblaker@conroysimberg.com
Email: mwildner@conroysimberg.com

**Louis Reinstein**
Kelley Kronenberg
10360 West State Road 84
Ft. Lauderdale, FL 33324
954-370-9970
Fax: 954-382-1988
Email: lreinstein@kklaw.com